Richard W. Wallach, J.
This is an action brought by an investor businessman to recover damages from the telephone company (Company) for interruptions and breakdowns in service to his home in December, 1968, and intermittently thereafter.
At the outset of this nonjury trial plaintiff moved to dismiss the fourth and fifth affirmative defenses contained in defendant’s supplemental answer as a matter of law. The fourth defense alleges that defendant performed its services of furnishing, repairing and maintaining plaintiffs telephone service in good faith and without malice. The fifth defense sets up the schedule or "tariff’ filed with the Public Service Commission (General Tariff P.S.C. No. 800) which, in substance, purports to insulate the Company from any liability resulting from errors, omissions and mistakes in providing service to the public "in the absence of gross negligence or wilful misconduct”.
The court reserved decision upon plaintiffs motion addressed to these defenses and both parties proceeded to adduce their proofs with respect to liability. The parties have now rested with respect to the liability issues, and proof as to damages has been deferred pending a ruling upon plaintiff’s motion to strike these defenses.
It is conceded by plaintiff that nothing in the record would *679 sustain a finding that plaintiffs alleged troubles with defendant’s telephone service arose from malice, gross negligence, or willful misconduct. To sustain his cause of action, and in the face of much settled law to the contrary (e.g., Weld v Postal Tel.-Cable Co., 199 NY 88; Hamilton Employment Serv. v New York Tel. Co., 253 NY 468), plaintiff adopts a bold stance which has been argued by his counsel with commendable imagination and ingenuity. Plaintiff advances the proposition that since 1933, when the mentioned tariff was filed with the Public Service Commission, the New York courts have gone awry in supposing (e.g., Meyerson v New York Tel. Co., 65 Misc 2d 693; Warren v New York Tel. Co., 67 Misc 2d 348) that the sine qua non of recovery by a subscriber for interruption in his telephone service is a showing of gross negligence and/or willful misconduct. Plaintiff, on the contrary, contends that even ordinary negligence need not be proved, but that the Company’s obligation to respond in damages lies in the realm of strict liability.
In support of this argument plaintiff invokes section 91 of the Public Service Law which provides: "1. Every * * * telephone corporation shall furnish and provide with respect to its business such instrumentalities and facilities as shall be adequate”.
Plaintiff submits that this section of the Public Service Law creates an absolute statutory duty. Once, says plaintiff, a telephone subscriber proves an interruption of service, it follows that the "facilities” furnished are ipso facto not "adequate”; thereupon the role of the court is to assess the damages incurred in an action brought pursuant to section 93 of the Public Service Law.
If, indeed, plaintiff were correct in his reading of section 91, it would follow that no rule or regulation of the Public Service Commission could pre-empt or diminish what plaintiff terms "the mandate” of the legislation; a fortiori no self-serving tariff filed by the telephone company, albeit with the imprimatur of the commission, could have such effect (Matter of National Merchandising Corp. v Public Serv. Comm., 5 NY2d 485; People ex rel. Public Serv. Interstate Transp. Co. v Public Serv. Comm., 262 NY 39; People ex rel. Municipal Gas Co. of City of Albany v Public Serv. Comm., 224 NY 156).
However, this court holds that section 91 is not susceptible of the reading or interpretation attributed to it by plaintiff. *680 Accordingly, plaintiffs motion to strike the defenses is denied, and his cause of action is dismissed.
Section 91 does not stand in splendid isolation, but is part of a comprehensive regulatory scheme for public utilities. The requirement that "instrumentalities and facilities” must be "adequate” must be read as a statutory guide to the primary responsibility of the commission, which is the supervision and control of "rates, rentals and charges” for service (Public Service Law, § 92). The rates for service, insofar as section 91 may be germane, must be fixed so that the telephone company’s instrumentalities and facilities shall be adequate "to its business”, This is a far cry from the sweeping construction given this statute by plaintiff: that the facilities must be adequate (meaning without any interruption) "to every subscriber”. The notion that section 91 confers a private right of action has been rejected by courts in the past, and the liability imposed by section 93 has been limited to violation of a direct order of prohibition or command issued by the Public Service Commission (Meyerson v New York Tel. Co., 65 Misc 2d 693, supra; Leighton v New York Tel. Co., 184 Misc 827). It is well settled that statutes may impose a standard of performance for a given class of persons, the breach of which does not create a statutory cause of action in others. Thus in Beauchamp v New York City Housing Auth. (12 NY2d 400), a section of the Administrative Code of the City of New York, providing that an unguarded and vacant building shall be deemed a nuisance to be abated by its owner, was held not to create a cause of action in favor of children or vagrants who might enter and be injured. Where a statute required owners of a multiple dwelling to have a self-closing door leading to the roof, violation by a landlord created no new liability in favor of a tenant (Lorberblatt v Gerst, 10 NY2d 244). To the same effect is Munoz v Goldstein (16 AD2d 142).
Plaintiff also appears to argue that the limitation of liability of the Company to acts or omissions constituting gross negligence is beyond the power of the commission since it lies outside the purview of rate regulation — the scope of its statutory grant of power. In fact, however, liability and ratemaking are inextricably intertwined. As Mr. Justice Brandéis held in a similar context upholding a telegraph company’s limitation of liability, "[t]he limitation of liability was an inherent part of the rate.” (Western Union Tel. Co. v Esteve Bros. & Co., 256 *681 US 566, 571.) A broadened liability exposure must inevitably raise the costs, and thereby the rates, of telephone service.
Indeed, to impose the kind of liability contended for by plaintiff here would undoubtedly have a catastrophic impact on the rates to be charged the public at large for telephone service. If this action were permitted to go forward, plaintiff would be seeking a recovery based on the loss of speculative gains on Wall Street in an amount as yet unspecified in his complaint. Unlike a telegraph company, a telephone company does not receive and transmit messages. It is in no position to take extra precautions with matters which entail either disclosed or discernible risks. Given the reading of section 91 contended for by plaintiff, today the Company might make good his stock market losses (including lost opportunities) which he attributes to poor telephone service; tomorrow for the same reason it might be called upon to pay the owner of a building lost because of the late arrival of fire trucks; and the next day it might have to reimburse next of kin for the value of a decedent’s life lost because of the delayed appearance of the ambulance. Obviously, the absorption of such risks would have an immediate impact on the monthly bill of each and every present telephone subscriber.
It follows that the adoption by the Public Service Commission of General Tariff No. 800 is entirely within its competence, and that the tariff, limiting the Company’s liability to acts or omissions of gross negligence, must be upheld.
Accordingly, the complaint is dismissed. Pursuant to the stipulation of the parties defendant is entitled to enter judgment on its counterclaim against plaintiff in the sum of $9,413.03 with interest from May 8, 1975.