Argued and submitted January 30, affirmed March 24, 1980

# GARRISON,
*Appellant,*

*v.*

# PACIFIC NORTHWEST BELL,
*Respondent.*

## (No. A7702-02262, CA 13601)

608 P2d 1206

[524]

Michael O. Moran, Portland, argued the cause for appellant. With him on the briefs were William B. Crow and Miller, Anderson, Nash, Yerke & Wiener, Portland.

E. Joseph Dean, Portland, argued the cause and filed the brief for respondent. With him on the brief was Stoel, Rives, Boley, Fraser & Wyse, Portland.

Before Schwab, Chief Judge, and Campbell and Gillette,* Judges.

CAMPBELL, J.

*Gillette, J.,  *vice* Lee, J., deceased.

## CAMPBELL, J.

Plaintiff appeals from the trial court's order granting defendant's motion for summary judgment. The court ruled that (1) plaintiff has no private right of action under ORS 757.020 for a telephone directory error; (2) plaintiff is, therefore, not entitled to treble damages under ORS 756.185 for a violation of ORS 757.020, but is entitled only to the limited remedy established in Public Utility Commission Rule and Regulation No. 15, para XV.B, Schedule E-41[1] covering directory errors; and (3) defendant is entitled to judgment as a matter of law. Plaintiff assigns error to the trial court's rulings that plaintiff is required to prove gross negligence under "the statute giving rise to plaintiff's cause of action," that there was no genuine issue of material fact and that as a matter of law plaintiff had insufficient evidence of defendant's gross negligence. We affirm.

The following facts are undisputed. Plaintiff is a licensed physician holding the degree of M.D. and specializing in child psychiatry. During the year 1976 and at all material times, plaintiff has subscribed to defendant's telephone service for her office. As part of the service defendant provides for its business subscribers, including physicians such as plaintiff, it lists the correct name, business address, medical degree, and telephone number of the physician-subscriber in the alphabetical directory (white pages), and in the

---

[1] This regulation provides:

"Liability for listings in Directories

"The Company is liable for errors or omissions in listings of its subscribers in its telephone directories in accordance with the following:

"1. Listing furnished without additional charge: In amount not in excess of the charge for exchange service (excluding additional message charges) during the effective life of the directory in which the error or omission is made.

"2. Listing furnished at additional charge: In amount not in excess of the charge for that listing during the effective life of the directory in which the error or omission is made."

[525]

classified directory (yellow pages) in an alphabetical list of physicians. In June 1976 plaintiff ordered directory listings for the 1977 editions of the white pages and yellow pages. When the 1977 directories were issued, plaintiff was incorrectly listed in the white pages as "Garrison Penelope K phy & sur *DO*" (emphasis added). Her yellow pages listing erroneously appeared in the section in which osteopaths are listed.

Plaintiff's second amended complaint alleged two causes of action, the first concerning the white pages and the second the yellow pages. Count I of each cause of action alleged that the particular erroneous listing was a result of defendant's reckless disregard for and indifference to plaintiff's right to an accurate listing:

> "(1) in failing to provide its employees with adequate or any instruction concerning the necessity for accurate processing of listing requests; (2) in failing to instruct and educate its employees as to the differences between a doctor of osteopathy and a medical doctor, even though defendant knew or should have known that an improper listing would result in great and irreparable harm to a medical doctor improperly listed; (3) in failing to provide adequate procedures for collecting accurate listing information; and (4) in failing to provide adequate or any procedures to verify that listing information is correct."[2]

Under each cause of action plaintiff prayed for $55,000 damages and alleged in Count I of each cause of action her entitlement to treble damages under ORS 756.185 for defendant's failure to provide adequate service as mandated by ORS 757.020. She also prayed in Count I of each cause of action for reasonable attorney's fees, as authorized by ORS 756.185, in the amount of $5,000.

---

[2] Count II of each cause of action alleged defendant's breach of contract in failing to insert the listings upon which the parties agreed and for which plaintiff paid the lawful rates. Plaintiff has not specifically raised before this court the counts based on contract. The parties have apparently assumed that a ruling adverse to plaintiff on her second assignment will resolve any questions concerning the contract counts.

Defendant first contends that plaintiff has not pre·served her first assignment. Throughout the proceedings below, plaintiff acknowledged the Public Utility Commissioner's authority to limit defendant's liability for ordinary negligence, and took the position that she was required to prove gross negligence. She now urges this court to hold that the trial court erred in requiring her to prove gross negligence. As plaintiff concedes, it is the general rule that the parties to an appeal are restricted to the theory upon which the case was presented before the trial court. *See Leiser v. Sparkman,* 281 Or 119, 122, 573 P2d 1247 (1978); *Friesen v. Fuiten,* 257 Or 221, 478 P2d 372 (1970). An exception may arise in cases involving questions of substantial public importance. *State v. Hickmann,* 273 Or 358, 540 P2d 1406 (1975); *Agan et al v. U.S. Bank,* 227 Or 619, 629, 363 P2d 765 (1961). Central to the present case are the questions whether a telephone subscriber may bring a private action under ORS 757.020 and 756.185 for a directory error, and whether the Public Utility Commissioner (Commissioner) has the authority to limit by regulation the damages recoverable by a telephone service subscriber for such an error. In view of the public importance of the fundamental issues of the Commissioner's regulatory and ratemaking authority involved here, we will exercise our discretion to address plaintiff's arguments.[3]

ORS 757.020 provides:

"Every public utility is required to furnish adequate and safe service, equipment and facilities, and the charges made by any public utility for any service rendered or to be rendered in connection therewith shall be reasonable and just, and every unjust or unreasonable charge for such service is prohibited."

---

[3] Defendant also argues that since plaintiff has not assigned error to the trial court's ruling that ORS 757.020 gives plaintiff no private right of action for a directory error, and did not adequately brief the question on appeal, the trial court's ruling is the law of the case. *See* Rule 7.19, Rules of Procedure of the Oregon Supreme Court and Oregon Court of Appeals. We view the plaintiff's assignment of error and discussions in her appellant's brief and reply brief as sufficient to raise the issue.

Under ORS 756.010(11), " 'Service' is used in its broadest and most inclusive sense and includes equipment and facilities related to providing the service or the product served."

Plaintiff argues that accurate directories are an integral and necessary part of defendant's telephone service. As a result of defendant's directory error, plaintiff was listed as having an entirely different business, the practice of osteopathy, from that in which she is engaged. She concludes, therefore, that defendant failed to furnish her "adequate . . . service," in violation of ORS 757.020. That violation, she argues, gives rise to a private cause of action under ORS 756.185, which provides:

> "(1) Any public utility, railroad, air carrier or motor carrier which does, or causes or permits to be done, any matter, act or thing prohibited by ORS chapter 756, 757, 758, 760, 761, 763, 764, 767 or 773 or omits to do any act, matter or thing required to be done by such statutes, is liable to the person injured thereby in treble the amount of damages sustained in consequence of such violation together with a reasonable counsel's or attorney fees, to be fixed by the court in every case of recovery. Such attorney fees shall be taxed and collected as part of the costs in the case.

> "(2) Any recovery under this section does not affect recovery by the state of the penalty, forfeiture or fine prescribed for such violation.

> "(3) This section does not apply with respect to the liability of any public utility, railroad, air carrier or motor carrier for personal injury or property damage."

Finally, plaintiff contends that the Commissioner's attempt through rulemaking to limit recovery for directory errors exceeds his statutory authority.

A brief overview of the Commissioner's rulemaking and ratemaking authority will aid our discussion of plaintiff's contentions.

ORS 756.040 grants the Commissioner broad regulatory authority over public utilities, including the duty to

"represent the customers of any public utility, railroad, air carrier or motor carrier, and the public generally in all controversies respecting rates, valuations, service and all matters of which he has jurisdiction. In respect thereof he shall make use of the jurisdiction and powers of his office to protect such customers, and the public generally, from unjust and unreasonable exactions and practices and to obtain for them *adequate service at fair and reasonable rates.*

"(2) The commissioner is vested with power and jurisdiction to supervise and regulate every public utility, railroad, air carrier and motor carrier in this state, and to do all things necessary and convenient in the exercise of such power and jurisdiction." ORS 756.040(1) and (2) (emphasis added).

General rulemaking authority is granted under ORS 756.060, which delegates to the Commissioner the authority to

"adopt and amend reasonable and proper rules and regulations relative to all statutes administered by him * * * *."

The Commissioner also has general ratemaking authority. *See* ORS 757.205; 757.245; *Pacific Northwest Bell v. Davis,* 43 Or App 999, 608 P2d 547 (1979); *Pacific N.W. Bell v. Sabin,* 21 Or App 200, 534 P2d 984, *rev den* (1975). Whenever a public utility files a new rate or schedule of rates, the Commissioner may, upon written complaint or on his own motion, conduct a hearing in which the public utility must prove that the proposed rate or schedule of rates is reasonable. ORS 757.210. The Commissioner may also conduct an investigation and hearing on his own motion whenever he believes "that any service is . . . inadequate." ORS 756.515(1).

Under ORS 756.565, "All *rates,* tariffs, classifications, regulations, practices and *service* fixed, approved or prescribed by the commissioner * * * shall be in force and shall be prima facie lawful and reasonable, until found otherwise in a proceeding brought for

that purpose under ORS 756.580 to 756.610." (Emphasis added.) Thus, the rates and service levels set by the Commissioner are prima facie lawful and are not open to collateral attack in this proceeding.

The first question we address is whether by the erroneous listings defendant has violated ORS 757.020, the "adequate service" statute.

Viewed in the context of the regulatory scheme outlined above, ORS 757.020 establishes the standard, "adequate service," that must guide the Commissioner in setting the level of service for which he must also establish reasonable rates. Under an analogous statutory scheme, the court in *Abraham v. New York Tel. Co.,* 380 NYS 2d 969, 85 Misc 2d 677 (1976), rejected the plaintiff's contention that the New York "adequate facilities" statute imposes an absolute statutory duty on public utilities and creates a private right of action for interruptions and breakdowns in telephone service. The court reasoned that that statute "must be read as a statutory guide for the primary responsibility of the Commission, which is the supervision and control of 'rates, rentals and charges' for service." 380 NYS 2d at 971.

Plaintiff argues that a holding that ORS 757.020 and 756.185 do not create a private right of action for directory errors would conflict with *Holman Transfer Co. v. PNB Telephone Co.,* 287 Or 387, 599 P2d 1115 (1979), insofar as *Holman* held that ORS 756.185 creates a private right of action. The threshold question here, however, is not whether ORS 756.185 creates a private right of action, but whether through the erroneous directory listings defendant has violated ORS 757.020. Only through proof of defendant's violation of one of the provisions enumerated in ORS 756.185 can plaintiff obtain a remedy under that statute.

We agree with the reasoning of the court in *Abraham,* and hold that the "adequate service" statute is not violated by a directory error.

[530]

We next address the Commissioner's authority to promulgate the regulation in question. That regulation, set out at footnote 1, *supra,* is not merely a limitation of liability. Rather, the function of the regulation is to determine the scope of defendant's service obligation. *Holman v. Southwestern Bell Telephone Company,* 358 F Supp 727 (D. Kan. 1973); *Wilkinson v. New England Tel. & Tel. Co.,* 327 Mass 132, 97 N.E. 2d 413 (1951). That is, when the telephone company pays the established remedy for directory errors, it has satisfied its duty to provide adequate service. Rates, service levels, and the remedy for erroneous listings or service failures are inseparable. A broadening of exposure to liability would increase the cost of furnishing telephone service and thereby result in higher rates. As Justice Brandeis stated in a similar context upholding a telegraph company's limitation of liability, "the limitation of liability was an inherent part of the rate." *Western Union Telegraph Co. v. Esteve Brothers & Co.,* 256 US 566, 571, 41 S Ct 584, 586, 65 L Ed 1094, 1097 (1921). Thus, the regulation lies at the core of the Commissioner's authority to set adequate service levels and establish reasonable rates therefor.

Courts are virtually unanimous that provisions limiting a public utility's liability are valid so long as they do not purport to grant immunity or limit liability for gross negligence. *See, e.g., Behrend v. Bell Telephone Company,* 242 Pa Super 47, 363 A2d 1152 (1976), *vacated on other grounds,* 470 Pa 320, 374 A2d 536 (1977); *Allen v. General Tel. Co. of Northwest, Inc.,* 20 Wash App 144 578 P2d 1333 (1978); Annotation, 92 ALR 2d 917 (1963) and cases cited therein. These limitations have been justified as reasonable on various grounds. One theory underlying some decisions is that in consideration of the strict regulation of a public utility's operations and curtailment of its rights and privileges, regulation of its liabilities to some extent is necessary to strike an equitable balance of benefits and burdens. *See, e.g., State ex rel Mt. States T. & T. Co.*

*v. District Court,* 160 Mont 443, 503 P2d 526 (1972). Other courts have upheld such limitations on the basis of the interrelationship between the limitation of liability and the rate structure. *See, e.g., Waters v. Pacific Telephone Co.,* 12 Cal 3d 1, 114 Cal Rptr 753, 523 P2d 1161 (1974); *Abraham v. New York Tel. Co., supra.* The technological complexity of modern telephone systems and the many ways in which service failures could occur with no human fault have been held to justify limitations of liability. *See, e.g., Holman v. Southwestern Bell Telephone Company, supra; Wilkinson v. New England Tel.& Tel. Co., supra.*

Plaintiff argues that a requirement of gross negligence would be inconsistent with *Holman Transfer Co. v. PNB Telephone Co.,* 287 Or 387, 599 P2d 1115 (1979), since *Holman* held that the application of the treble damages remedy of ORS 756.185(1) is not limited to instances of gross negligence. Since we have pointed out, however, that this action does not arise under ORS 756.185, *Holman* does not assist plaintiff.

We agree with the overwhelming weight of authority that the limitation of liability is reasonable insofar as it does not shelter defendant from liability for gross negligence.

Finally, we turn to whether there is any jury question as to gross negligence. Gross negligence is characterized by conscious indifference to or reckless disregard of the rights of others. *See State v. Hodgdon,* 244 Or 219, 223, 416 P2d 647 (1966); *Williamson v. McKenna,* 223 Or 366, 354 P2d 56 (1960) (adopting definition of reckless disregard in Restatement (Second) of Torts § 500). In the context of a guest passenger case it has been stated that "[I]n order to show gross negligence it is incumbent upon the plaintiff to prove that defendant's conduct, when measured objectively, reveals 'a state of mind indicative of an indifference to the probable consequences of one's acts.' This state of mind has been described as an 'I don't care what happens' attitude. *Bottom v. McClain,* [260 Or 186,

[532]

191-92, 489 P2d 940 (1971)]." *Hill v. Garner,* 277 Or 641, 646, 561 P2d 1016 (1977). Ordinarily, the issue of gross negligence is a question of fact to be decided by the jury. *See Oregon Auto Ins. Co. v. Fitzwater,* 271 Or 249, 531 P2d 894 (1975). The court will withdraw the issue from the jury only when it can say as a matter of law that the actor's conduct falls short of gross negligence.

In *Forest Grove Brick v. Strickland,* 277 Or 81, 87, 559 P2d 502 (1977), the court stated the standard for review of a grant of summary judgment:

> "To warrant summary judgment the moving party must show that there is no genuine issue of material fact. It is not the function of this court on review to decide issues of fact but solely to determine if there is an issue of fact to be tried. We review the record on summary judgment in the light most favorable to the party opposing the motion."

Plaintiff contends on appeal that the affidavits, depositions, and exhibits on file reveal five issues of material fact. The first four issues of fact plaintiff points to concern: alleged discrepancies between testimony by plaintiff and one of defendant's employes as to whether during a telephone conversation to verify plaintiff's listing the employe informed plaintiff she would be listed as a D.O. and discussed medical specialty listings; the credibility of the two witnesses to that telephone conversation; whether another of defendant's employes was grossly negligent in processing a "business application form" and a "service authorization form"; and whether the testimony of one of defendant's employes indicated her reckless disregard toward plaintiff's right to an accurate listing. Plaintiff's allegations of gross negligence, however, all relate to defendant's training programs and procedures. Thus, we fail to see how these issues of fact, if they exist, are material to the issue of whether defendant was grossly negligent under any of the specifications of gross negligence.

The remaining issue of fact urged by plaintiff is whether defendant was grossly negligent in failing to give sufficient training to its employes with respect to the distinction between a physician, M.D., and a physician, D.O. Neither Joyce Mattson, defendant's business representative who took plaintiff's original order for telephone service, nor Deanna Bailey, defendant's professional clerk who confirmed the listing, could explain osteopathy. Neither was familiar with how the training received by an M.D. differs from that received by a D.O. Defendant did not introduce any instructional materials that could enable its employes to distinguish between the different categories of physicians by training or job function. Plaintiff contends that from these facts a jury could reasonably conclude that defendant recklessly disregarded its obligation to train its employes to ensure accurate directory listings.

Both Bailey and Mattson testified in their depositions that they knew there was a difference between an M.D. and a D.O. Bailey testified that she could properly list a doctor without knowing the doctor's precise training or job function, and plaintiff produced no evidence to suggest otherwise as to either.

We conclude as a matter of law that this evidence raises no genuine issue of material fact. So long as defendant trains its employes to recognize that there is a difference between the categories of physicians which is significant for directory classification purposes, defendant's failure to train its employes in the details of physicians' training and job functions is not gross negligence.

We hold that the trial court did not err in granting defendant's motion for summary judgment.

Affirmed.