MUNICIPALITY OF ANCHORAGE, an Alaska Municipal Corporation, d/b/a the Anchorage Telephone Utility, and GTE Directories Corporation, Petitioners,

v.

Phillip LOCKER, D.D.S.,
Respondent.

No. S–1117.

Supreme Court of Alaska.

Aug. 22, 1986.

Daniel A. Gerety, Donald C. Thomas, Delaney, Wiles, Hayes, Reitman & Brubaker, Anchorage, for petitioners.

Douglas B. Baily, William T. Cotton, Baily & Mason, Anchorage, for respondent.

Before RABINOWITZ, C.J., BURKE, J., and BRYNER, Chief Judge, Court of Appeals.*

* Bryner, Court of Appeals Judge, sitting by assignment made pursuant to Art. IV, § 16, of the Constitution of Alaska.

BURKE, Justice.

The Municipality of Anchorage, doing business as Anchorage Telephone Utility, and GTE Directories Corporation (ATU)[1] petitioned for review of the superior court's grant of partial summary judgment to certain advertisers, whose Yellow Pages advertisements were allegedly omitted or erroneously published. At issue is whether limited liability provisions in ATU's tariff and its Yellow Pages advertising contract are valid. The superior court held that these provisions were unconscionable and, therefore, void. We accepted the petition because the trial court's ruling involves an important question of law upon which there is substantial ground for difference of opinion. Alaska Rule of Appellate Procedure 401(b)(2).

ATU presents two major arguments. First, it argues that one of its tariff provisions on file with the Alaska Public Utilities Commission (APUC), limiting ATU's liability, is valid and enforceable. Second, ATU contends that the agreement between advertisers and ATU for Yellow Pages advertising is a private contract involving no public service or public duty. Thus, it argues that the exculpatory clause in the advertisement agreement should be upheld. We disagree. ATU benefits greatly from its state-granted monopoly status. Because of this special monopolistic privilege, ATU may not limit its liability by contract. Since publication of a Yellow Pages is beyond the scope of APUC's regulatory power, the tariff limiting its liability for negligence is not effective.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Phillip Locker, D.D.S. (advertiser) contracted with ATU for a listing in the Yellow Pages of the Anchorage telephone directory. The listing was allegedly either wholly or partially omitted, misclassified, or wrongly printed by ATU. Advertiser al-

1. In this opinion, we treat GTE, ATU's agent, the same as ATU.

leged substantial losses as a result of ATU's acts.

As a defense to advertisers' action, ATU claimed that its liability was limited by both a contractual provision and its tariff filed with the APUC. Advertiser moved for partial summary judgment to prohibit ATU from relying on these affirmative defenses. The superior court granted advertiser's motion. The court followed "the rationale and holdings" in *Allen v. Michigan Bell Telephone,* 18 Mich.App. 632, 171 N.W.2d 689 (1969) and *Discount Fabric House v. Wisconsin Telephone,* 117 Wis.2d 587, 345 N.W.2d 417 (1984). The court stated that advertisers were obligated to prove damages "with the requisite degree of specificity," and refused to express any further opinion on damages issues.

## II. DISCUSSION

In addition to the Wisconsin Supreme Court decision in *Discount Fabric,* 345 N.W.2d 417, and the Michigan Appellate Court decision in *Allen,* 171 N.W.2d 689, the Alabama Supreme Court has also invalidated a telephone company exculpatory clause. *Morgan v. South Central Bell Telephone,* 466 So.2d 107 (Ala.1985). Virtually every other state court which has considered the issue has upheld exculpatory clauses as valid, because they are either part of a tariff on file with the appropriate public commission or a private contract. *See, e.g., McTighe v. New England Telephone & Telegraph,* 216 F.2d 26 (2d Cir. 1954) (private contract valid); *Cole v. Pacific Telephone & Telegraph,* 112 Cal. App.2d 416, 246 P.2d 686 (1952) (tariff valid). We nevertheless are persuaded by the reasoning in *Allen, Discount Fabric,* and *Morgan.*

### A. *The Tariff Provision Filed by ATU Does Not Bar Recovery In Excess of Stated Liability for Yellow Pages Errors*

ATU, as a public utility, is regulated by the APUC. *See* AS 42.05.720(4)(B) and AS 42.05.720(8). ATU must file with the APUC a

> complete tariff showing all rates, including joint rates, tolls, rentals and charges collected and all classifications, rules, regulations, and terms and conditions under which it furnishes its services and facilities ... together with a copy of every special contract with customers which in any way affects or relates to the serving utility's rates, tolls, charges, rentals, classifications, services or facilities.

AS 42.05.361(a). A tariff is required "[f]or *every service* that a utility ... offers *that .is regulated* by the commission." 3 AAC 48.320(a) (emphasis added). ATU must regularly publish a directory. 3 AAC 52.-250(a). That directory must contain, *inter alia,* the numbers of the utility's subscribers, 3 AAC 52.250(a)(1), and must be furnished free of charge to each subscriber, 3 AAC 52.250(b). "Directory" is defined as "a paperbound volume which lists alphabetically the names of subscribers and their corresponding telephone numbers and *may include but is not limited to a yellow pages listing.*" 3 AAC 52.340(22) (emphasis added).

Pursuant to these regulations, ATU filed a tariff with the APUC which states:

> No liability arising from errors or omission in the making up or printing of its directories shall be attached to the Municipality of Anchorage except in the case of charge listings; in connection with these its liability shall be limited to a refund at the monthly rate for each listing for the time an error or omission continues after a reasonable notice in writing to the Municipality of Anchorage.

Tariff Advice No. 182B.

ATU argues that once such tariff is filed with the APUC it has the effect of law. A number of courts have held that exculpatory provisions filed with a regulatory agency effectively limit liability for errors in Yellow Pages advertising.[2] Other courts

---

**2.** *Wheeler Stuckey, Inc. v. Southwestern Bell Telephone,* 279 F.Supp. 712, 714 (W.D.Okla.

1967); *Davidian v. Pacific Telephone & Telegraph,* 16 Cal.App.3d 750, 94 Cal.Rptr. 337

limit the application of the tariff to services which the agency may regulate.[3] Those latter courts reason that since the regulatory agencies lack jurisdiction over private contracts, the tariff provisions apply only to the alphabetical directory required as part of the public service provided. *See, e.g., McTighe,* 216 F.2d at 27–28; *Modern Equipment v. Puerto Rico Telephone,* 440 F.Supp. 1242, 1243 (D.P.R.1977). Still other courts extend the tariff limitation to a single listing in the classified section where the listing is required and for which there is no advertising fee. *See, e.g., Woloshin v. Diamond State Telephone,* 380 A.2d 982, 983 (Del.Ch.1977); *Behrend v. Bell Telephone,* 242 Pa.Super. 47, 363 A.2d 1152, 1164–65 n. 16 (1976).

■ Advertiser argues that the tariff should not apply because the APUC does not regulate classified advertisements. We agree. Even though public utilities are regulated by the APUC, not all of their activities are proscribed. The APUC specifically regulates the "furnishing of telecommunications services and facilities to the public." 3 AAC 52.200(a); AS 42.05.-361(a). Although the powers of the APUC are to be liberally construed, AS 42.05.-141(1), its jurisdiction does not extend beyond regulation of required services or facilities. Yellow Pages advertisements are not a telecommunication service. To apply the tariff provision to such advertisements we would imply that APUC could regulate the Yellow Pages. We decline to imply such regulatory authority. The administrative regulations explicitly make publication of the Yellow Pages optional. *See* 3 AAC 52.250(a) & 52.340(22).

■ ATU also argues that the limited liability provision is necessarily part of its tariff because such limitation directly affects the rates it charges. Without such a limitation, it asserts, the overall rates for its service might increase. Therefore, ATU reasons, the APUC properly accepted the tariff limiting Yellow Pages liability under its authority to regulate overall rates. ATU relies on *Davidian v. Pacific Telephone and Telegraph,* 16 Cal.App.3d 750, 94 Cal.Rptr. 337 (1971) and *Garrison v. Pacific Northwest Bell,* 45 Or.App. 523, 608 P.2d 1206 (1980). Those courts do indeed hold that the limitation of liability is an inherent part of the overall rate. *Davidian,* 94 Cal.Rptr. at 339; *Garrison,* 608 P.2d at 1211.

Other courts, however, hold otherwise. The United States Court of Appeals for the District of Columbia has held that the District's regulatory body explicitly does not have jurisdiction to regulate the rates charged for Yellow Pages advertising. *Classified Directory Subscribers Association v. Public Services Commission,* 383 F.2d 510 (D.C.Cir.1967) (defining "services and facilities" in enabling legislation). It reasoned that even if the Commission considers advertising revenues as part of gross revenues for rate making, advertising rates are not subject to comprehensive regulation. We agree. A mere tangential effect upon overall rates will not suffice to limit categorically ATU's liability for negligence. We, therefore, reject ATU's argument that its liability is limited by the tariff.

**B.** *The Limited Liability Clause in the Advertising Contract Is Invalid*

■ The courts in *Allen,* 171 N.W.2d 689, *Discount Fabric,* 345 N.W.2d 417,[4]

---

(1971); *Cole,* 246 P.2d at 687; *Shoemaker v. Mountain States Telephone & Telegraph,* 38 Colo.App. 321, 559 P.2d 721, 723 (1976); *Woloshin v. Diamond State Telephone,* 380 A.2d 982, 984 (Del.Ch.1977); *Garrison v. Pacific Northwest Bell,* 45 Or.App. 523, 608 P.2d 1206 (1980); *Behrend v. Bell Telephone,* 242 Pa.Super. 47, 363 A.2d 1152, 1153, 1164–66 (1976), *vacated on other grounds in* 473 Pa. 320, 374 A.2d 536 (1977), *reinstated in* 257 Pa.Super. 35, 390 A.2d 233 (1978).

**3.** *McTighe,* 216 F.2d at 27; *State ex rel. Mountain States Telephone & Telegraph v. District Court,* 160 Mont. 443, 503 P.2d 526, 529 (1972).

**4.** We recognize that in so holding the Wisconsin Court relied in part on its Constitution. Art. I, § 9 of the Wisconsin Constitution provides:

Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely,

and *Morgan,* 466 So.2d 107, all determined that publication of the Yellow Pages was affected with the public interest, and that exculpatory clauses were unconscionable. ATU urges us to disregard the reasoning of these courts and to apply the majority position, thus validating its contractual exculpatory clause. ATU correctly asserts that publication of the Yellow Pages is not required by the APUC. However, such publication is affected with a public interest. ATU is in a unique position to publish the Yellow Pages only because it is authorized to operate the monopoly utility for the public.

In defining a contract affected with a public interest, the *Allen* and *Morgan* courts relied on *Tunkl v. Regents of the University of California,* 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963). The California court described transactions in which exculpatory provisions will be invalidated on public policy grounds.

It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bar-

gaining power the party confronts the public with a standardized adhesion contract of exculpation whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Id.* 32 Cal.Rptr. at 37–8, 383 P.2d at 445–46 (footnotes omitted).[5]

■ ATU fits squarely within this profile. ATU is a type of business suitable for regulation and is so regulated by the APUC. The publication of the telephone directory, in general, and the Yellow Pages, in particular, is a service of great importance to the public; Yellow Pages advertising is often the only affordable means of advertising for small businesses. ATU holds itself out as willing to perform this service, and indeed extols the benefits of Yellow Pages advertising in commercial advertising of its own. Thus, we conclude that publication of the Yellow Pages is affected with a public interest.

■ Since we have so determined we must more closely scrutinize the transaction between ATU and the advertisers to ascertain whether the exculpatory clause is unconscionable. Most recently in *Vochner v. Erickson,* 712 P.2d 379 (Alaska 1986), we considered all of the circumstances surrounding the making of the contract and held that unconscionability may exist where those circumstances indicate a vast disparity of bargaining power coupled with terms unreasonably favorable to the

and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

This provision is much broader than any remedial right provided in the Alaska Constitution; however, the reasoning of the Wisconsin Court on the issues of public interest and unconscionability is nevertheless persuasive.

**5.** Although the *Discount Fabric* court did not explicitly rely on *Tunkl,* it expressly outlined similar criteria.

There are four situations in which exculpatory contracts have been declared void on

public policy grounds. (1) A contract arises out of a business generally thought suitable for public regulation; (2) the party seeking exculpation is engaged in performing a service of great importance to the public; (3) the party seeking exculpation holds itself out as willing to give reasonable public service to all who apply; and (4) the party invoking exculpation possesses a decisive advantage of bargaining strength.

345 N.W.2d at 420.

stronger party. *Id.* at 381–83. *See also Morrow v. New Moon Homes,* 548 P.2d 279, 292 n. 43 (Alaska 1976) (approving of the definition of unconscionability in *Williams v. Walker-Thomas Furniture,* 350 F.2d 445, 449 (D.C.Cir.1965) ("Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."); Restatement (Second) of Contracts § 208 comment d at 109 (1981).

ATU argues that there was insufficient evidence that ATU was "in an unfairly superior bargaining position vis-a-vis the plaintiff-advertisers." It asserts that no evidence was presented that the advertisers bargained for a different provision or that such bargaining was impossible. However, ATU did admit that the agreements entered into by the advertiser were on preprinted forms and that its sales representatives could not alter the terms of the advertising contracts.[6] Nevertheless, it implicitly contends that some one at GTE had the authority and would have renegotiated the terms. In opposing a motion for summary judgment the nonmovant must "set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of facts (sic) exists." *State v. Green,* 586 P.2d 595, 606 n. 32 (Alaska 1978) (citing *Howarth v. First National Bank of Anchorage,* 540 P.2d 486, 489–90 (Alaska 1975), *aff'd on rehearing,* 551 P.2d 934 (Alaska 1976)). ATU has presented no evidence that it would have negotiated individually with potential advertisers. The sales representatives' lack of authority to renegotiate terms would generally discourage, if not completely forestall, potential advertisers from seeking more favorable terms.

In addressing the position held by many courts and advanced by the ATU here— that advertisers are free to advertise elsewhere if the terms with the telephone company are not advantageous—the Alabama court in *Morgan* stated:

> The issue, however, is not whether there are other forms of advertising available, but whether such other modes are tied directly to the telephone service enjoyed by almost every home and business in the state. *The telephone company has an exclusive private advertising business which is tied to its public utility service ... and which reaches almost every home and office in the state.* Therefore, the telephone company can state to a customer that an ad will be published but name its own terms, including a limitation of its own liability for negligence.

> We are satisfied that the plaintiffs did not have a meaningful choice relative to the inclusion of an exculpatory clause in the ... contract and that the defendants had the bargaining power in a gross and unbalanced manner in determining the terms and conditions in the directory advertisement.

> Therefore, the exculpatory clause is unenforceable because, under [the *Tunkl* criteria], it is invalid as contrary to public policy.

*Morgan,* 466 So.2d at 117–18 (emphasis added); *see also Discount Fabrics,* 345 N.W.2d 417. We are persuaded by such reasoning.

■ We, therefore, believe that ATU had a decided advantage in bargaining with advertiser. Advertiser was presented with a form contract by sales representatives who had no authority to alter the provisions of the contract. Additionally the terms of the contract were decidedly unreasonable to advertiser. Under the contract, it could only recover the amount paid for a service that was negligently performed. The *Discount Fabric* court aptly described the clause as "the non-bargaining, non-responsibility clause." 345 N.W.2d at 421. As a state-regulated monopoly, ATU cannot shield itself from its own negligence. Through its privileged

---

**6.** GTE's answers to interrogatories indicate that GTE sales representatives had no such power.

position ATU has an exclusive private advertising business and has created a public interest in the Yellow Pages. The publication of the Yellow Pages is an inextricable and substantial benefit of the phone company's duty to provide service. Under such circumstances, we refuse to allow ATU to limit unilaterally its liability for negligence.

ATU also argues that limiting its liability was reasonable since ascertaining damages for errors or omissions in the Yellow Pages would be difficult. The courts are split on this issue. Those which uphold the limited liability clause maintain that the clause protects the company from speculative damages. *Gas House Inc. v. Southern Bell Telephone & Telegraph,* 289 N.C. 175, 221 S.E.2d 499, 505 (1976). Those which invalidate such clauses reason that a party is protected from speculative damages by the jury system, the instructions given the jury, and the trial judge's rulings during the trial and motions after verdict. *Discount Fabric,* 345 N.W.2d at 422. The *Discount Fabric* court stated that:

> If the clause is found contrary to public policy and therefore unenforceable, this does not make the telephone company an insurer against consequential damages of its solicited advertisers; the telephone company would only be held liable to its subscribers for damages caused by its own negligent acts. That determination does not make the telephone company's position in the business world any different than the vast majority of other commercial enterprises.

*Id.* (footnote omitted). *See also Morgan,* 466 So.2d at 115–16.

█ Lost profits are often at issue in breach of contract cases. We have repeatedly held that "lost profits, if proven, may be recovered. An award cannot stand, however, if the amount is the result of speculation, although it is not necessary to prove lost profits with exactness so long as actual loss of profits is shown and the jury has a reasonable basis on which to compute its award." *City of Whittier v. Whittier Fuel and Marine,* 577 P.2d 216, 222 (Alaska 1978) (citations and footnote omitted),

disapproved on other grounds in *Native Alaskan Reclamation & Pest Control v. United Bank of Alaska,* 685 P.2d 1211, 1219 (Alaska 1984); *see also Alaska Children's Services v. Smart,* 677 P.2d 899, 902 (Alaska 1984); *Guard v. P & R Enterprises,* 631 P.2d 1068, 1071 (Alaska 1981); *City of Palmer v. Anderson,* 603 P.2d 495, 500 (Alaska 1979). The potential difficulty in ascertaining damages does not inhibit us from invalidating the exculpatory clause. Advertiser will have to show a reasonable basis for recovery.

We therefore AFFIRM the trial court's grant of partial summary judgment to advertiser on the exculpatory issue. The limited liability clause in the advertising contract is unconscionable and void as against public policy.

MATTHEWS, COMPTON and MOORE, JJ., not participating.