Robert PRIOR, Appellant–Plaintiff,

v.

GTE NORTH INCORPORATED, Appellee–Defendant.

No. 19A01–9611–CV–385.

Court of Appeals of Indiana.

June 30, 1997.

John A. Hargis, Wagoner, Ayer & Hargis, Rockport, for Appellant–Plaintiff.

John B. Drummy, Van T. Willis, Diane E. Bluhm, Kightlinger & Gray, Indianapolis, for Appellee–Defendant.

## OPINION

BAKER, Judge.

In this case of first impression, we are asked to decide whether a public utility may limit its liability for omitting a customer's name from a directory and White Pages through a tariff[1] on file with the Indiana Utility Regulatory Commission (IURC). Specifically, appellant-plaintiff Robert Prior challenges the trial court's grant of summary judgment in favor of appellee-defendant, GTE North Incorporated (GTE), after the court upheld GTE's tariff to limit Prior's remedy to the monthly charge for telephone service.

### FACTS

The facts relevant to this appeal are not in dispute. Prior is involved in the business of selling truck-mounted cranes and related used equipment in Huntingburg, Indiana. His business covers a wide geographical area and includes several states. In order to increase his business, Prior placed his name and business telephone phone number in several of GTE's publications, including the 1993/1994 and 1994/1995 GTE Directory White Pages, the 1994 Perry/Spencer/Dubois Regional Directory White Pages and the 1992–1994 GTE Directory Information Service. Although Prior timely paid for the inclusion of his name in each publication, he learned in January 1995 that his name had been omitted from each publication. When Prior contacted GTE regarding the omissions, it refunded the monthly charge for his telephone service during the months in which his number had been omitted. However, GTE refused to reimburse Prior for his lost business revenues pursuant to its tariff on file with the IURC which limited its liability for damages arising from "errors in/or omissions of directory listings . . . to the monthly rate for each such listing for the charge period during which the error or omission continues." Record at 43.

Thereafter, on November 16, 1995, Prior brought an action against GTE to recover his lost business revenues and punitive damages. In his complaint, Prior alleged that GTE had breached its contract with him and was negligent, grossly negligent and reckless[2] by failing to include his name and telephone number in the business directories and White Pages.

In response, GTE filed a motion for summary judgment claiming that Prior's claims for damages were precluded by the tariff on file with the IURC. Specifically, GTE argued that the tariff limited its liability to the cost of the monthly charge paid by Prior for the inclusion of his name in the GTE publications. According to GTE, because it had already refunded Prior's monthly charge for the months in which his ads were omitted, it had no further liability.

In response to GTE's motion, Prior argued that the tariff's limitation of liability clause was invalid because it abrogated GTE's statutory duty to provide "reasonably adequate service and facilities" under IND. CODE § 8–1–2–4. Prior also contended that public policy prohibited GTE from limiting is liability through the tariff. Thus, Prior asserted that he was entitled to damages beyond the cost of his monthly telephone charges. After a hearing, the trial court granted GTE's motion for summary judgment.

On July 1, 1996, Prior filed a motion to correct error, wherein he argued that he was

---

1. The IURC has defined a tariff as "[a] schedule of recurring or nonrecurring charges together with general regulations properly filed with and approved by the Commission applicable to customers of the utility for services furnished." 170 I.A.C. § 7–1.1–3.

2. Although Prior's complaint includes claims for gross negligence and recklessness, the factual allegations set forth in the complaint reveal nothing more than simple negligence. Furthermore, Indiana does not recognize degrees of negligence. *Indiana Ins. Co. v. Handlon*, 216 Ind. 442, 448, 24 N.E.2d 1003, 1006 (Ind.1940). Therefore, we conclude as a matter of law that Prior has set forth claims based only in breach of contract and negligence.

denied a meaningful remedy under Article I, Section 12 of the Indiana Constitution because of the tariff's limitation of liability clause and that the IURC had no legislative authority to approve a tariff which limited GTE's liability for negligently omitting names from its directory. The trial court denied Prior's motion on August 30, 1996. Prior now appeals the trial court's grant of GTE's motion for summary judgment.

## DISCUSSION AND DECISION [3]

Prior challenges the grant of GTE's motion for summary judgment on several grounds. In particular, he contends that the tariff's limitation of liability clause is invalid for the following reasons: 1) the tariff abrogates GTE's statutory duty under I.C. § 8–1–2–4 to provide "reasonably adequate service and facilities;" 2) the IURC exceeded its legislative authority by approving a tariff which limits GTE's liability for negligently omitting a customer's name from the White Pages to the cost of his monthly telephone charges; 3) the tariff violates public policy; and 4) the tariff violates Article 1, Section 12, of the Indiana Constitution. On cross-appeal, GTE contends that this court lacks jurisdiction to determine the validity of the tariff because Prior failed to exhaust his administrative remedies.

Initially, we set forth our standard of review. In a motion for summary judgment, the burden is on the moving party to show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). Once the movant has sustained this burden, the opposing party must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it

relies for purposes of the motion. T.R. 56(C). When reviewing a trial court's grant or denial of a motion for summary judgment, this court applies the same standard as the trial court. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind.1993).

### I. Jurisdiction

■ First, we address GTE's contention that this court lacks jurisdiction to hear this appeal. Specifically, GTE argues that Prior failed to exhaust his administrative remedies because he failed to bring his challenge to the validity and reasonableness of the tariff before the IURC. In response, Prior contends that he is not required to exhaust his administrative remedies because he is attacking the facial validity of the tariff and the constitutionality of the IURC's action in approving a tariff which limits its liability without express legislative authority.

■ GTE correctly asserts that generally a party must exhaust his administrative remedies prior to seeking judicial review. *City of Lake Station v. State ex rel. Moore Real Estate, Inc.*, 558 N.E.2d 824, 828 (Ind. 1990). However, a recognized exception to this rule applies where an administrative regulation is alleged to be facially invalid. *Indiana Dep't of Ins. v. Golden Rule Ins.*, 639 N.E.2d 339, 342 (Ind.Ct.App.1994). Here, Prior is attacking the validity of the tariff by arguing in part that the IURC acted beyond its statutory authority in approving GTE's tariff. As a result, Prior is not required to exhaust his administrative remedies. *See Golden Rule*, 639 N.E.2d at 342 (insurance company which challenged Department of Insurance regulations governing qualified long-term care policies on basis that Department had exceeded statutory authority attacked validity of regulations and, therefore, was not required to exhaust administrative remedies prior to seeking judicial review).[4] Thus, this court has jurisdiction over this appeal.

---

**3.** Oral argument was heard in this cause on April 1, 1997, in Indianapolis Indiana.

**4.** In support of its contention, GTE relies on *Indiana Bell Tel. Co., Inc. v. Friedland*, 175 Ind. App. 622, 373 N.E.2d 344, 347 (1978), *cert. de-*

*nied*, 440 U.S. 916, 99 S.Ct. 1233, 59 L.Ed.2d 465 (1979), for the proposition that an attack on the validity and reasonableness of a tariff is within the exclusive jurisdiction of the Commission. In *Indiana Bell*, however, the appellant claimed that the tariff was discriminatory and arbitrarily

## II. Tariff's Validity

Next, we address Prior's challenge to the validity of the tariff. According to Prior, the tariff's limitation of liability clause is invalid for several reasons. First, Prior contends that the clause abrogates GTE's statutory duty under I.C. § 8–1–2–4 to provide "reasonably adequate service." Prior also contends that the IURC lacked express legislative authority to approve a tariff which limits GTE's liability. Finally, Prior argues that the tariff violates public policy and Article 1, Section 12, of the Indiana Constitution. We will address each contention in turn.[5]

### A. GTE's Duty to Provide Reasonably Adequate Service

First, Prior argues that the tariff is invalid because the liability limitation clause conflicts with GTE's statutory duty to provide "reasonably adequate service and facilities" under I.C. § 8–1–2–4. Specifically, Prior contends that this language creates a duty on the part of a utility to use reasonable care in providing service and that this duty is abolished if GTE is permitted to limit its liability for negligent behavior.

As Prior correctly notes, GTE, as a public utility, has a statutory duty to provide reasonably adequate service. *See South Eastern Indiana Natural Gas Co., Inc. v. Ingram*, 617 N.E.2d 943, 951 (Ind.Ct.App. 1993) (public utility supplying gas to greenhouse had statutory duty to furnish reasonably adequate service and facilities pursuant to I.C. § 8–1–2–4). This service includes the product itself, the use or accommodation afforded the customers and the equipment employed by the utility in performing the service. I.C. § 8–1–2–1. In providing its service, however, GTE must function under the IURC's regulations which are in place to ensure that GTE is providing the proper level of service. As a result of these regulations, the way GTE functions is significantly different than a private business. These considerations must be taken into account in determining whether GTE may limit its liability under the tariff.

Generally, when a private business provides inadequate service, the consumer files a civil suit for damages caused by the business' negligent errors. As a result of the litigation, the business becomes aware of its errors and may take measures, including the implementation of policies and procedures, to ensure that the mistake does not occur again. As a result, the quality of the business' service improves.

These improvements, however, do not occur without substantial costs which include the expenses of defending lawsuits, paying damages for negligent behavior and implementing new procedures. Although a private business may consider raising the amount it charges for providing its service, in order to offset these expenses, GTE, as a regulated public utility, is only permitted to charge a "reasonable and just" rate as determined by the IURC. I.C. § 8–1–2–4. In determining what is a reasonable and just rate, the IURC reviews the utility's overall financial condition including total revenue and expenses. *Board of Directors for Utilities of Dep't of Public Utilities of Indianapolis v. Office of Utility Consumer Counselor*, 473 N.E.2d 1043, 1052 (Ind.Ct.App.1985). Thus, in regulating GTE, the IURC must not only consider GTE's obligation to provide adequate service, but it must also consider GTE's expenses, including its exposure to unlimited liability for its negligence.

As a result, GTE's duty to provide adequate service is inextricably connected to its

---

applied, rather than facially invalid. Here, Prior is attacking the facial validity of the tariff as a whole. Thus, the holding in *Indiana Bell* is inapplicable to this case.

5. GTE also contends that Prior waived his argument regarding the IURC's lack of legislative authority and Article 1 Section 12 by raising them for the first time in his motion to correct errors. Although a party generally waives an issue by presenting it for the first time in his motion to correct error, *State Farm Ins. Cos. v. Flynn*, 531 N.E.2d 527, 530 (Ind.Ct.App.1988), we will address the merits of Prior's argument because it is necessary to the disposition of his other arguments concerning the validity of the tariff. *See Van Donk v. State*, 676 N.E.2d 349, 351 (Ind.Ct.App.1997) (where issue not raised before the trial court is necessary to the determination of the issue on appeal, issue is not waived on appeal).

rates and expenses, including its potential liability for errors and omissions and it is the IURC's responsibility to find a balance among these factors. Thus, it is reasonable to presume that the IURC concluded that subjecting GTE to unlimited liability would be an expense which could not easily be offset by its revenues unless GTE increased its rates to all consumers. Further, the IURC presumably believed that a substantial rate increase would not have resulted in a similar rise in service levels. Therefore, in the public's interest, the IURC limited GTE's liability for its errors and omissions to the amount of the customer's monthly charge. The IURC did not change GTE's obligation to provide reasonably adequate service, rather, it merely considered GTE's costs in determining an appropriate level of service. We find that this is an appropriate exercise of the IURC's authority. As a result, we conclude that the tariff's liability limitation clause does not violate GTE's statutory duty to provide reasonably adequate service and, therefore, is not invalid.

### B. IURC's Authority

Although we have determined that the tariff's limitation of liability clause does not abrogate GTE's duty, we must still determine whether the IURC had the authority to approve the tariff. It is well settled that the authority of an agency to act is limited to that which is granted to it by statute. *Charles A. Beard Classroom Teachers Ass'n v. Bd. of Trustees*, 668 N.E.2d 1222, 1224 (Ind.1996). Therefore, an agency may not adopt rules or regulations which are outside the scope of the powers conferred upon it by the legislature. *Id.* However, agencies have the implicit power to regulate so that they may effectuate their regulatory schemes set forth by statute. *Id.*

I.C. § 8–1–1–2 provides for the creation of the IURC whose purpose is to insure that public utilities provide constant, reliable and efficient service to its customers. *Office of Utility Consumer Counselor v. Public Serv. Co. of Indiana, Inc.*, 463 N.E.2d 499, 503 (Ind.Ct.App.1984). To enable the IURC to carry out its responsibilities, the legislature conferred upon the IURC the power to

"formulate rules necessary or appropriate to carry out the provisions of [this] chapter." IND. CODE § 8–1–1–3(g). Pursuant to this power, the IURC created regulations which require telephone utilities to "maintain on file with the Commission, tariffs which set forth all rates and charges for customer services, the classes and grades of service available to customers, the conditions and circumstances under which service will be furnished and all general rules and regulations governing the relations of customer and utility." 170 I.A.C. § 7–1.1–5.

Based on the IURC's enabling statute, the IURC had the authority to establish rules necessary to ensure that GTE was providing constant, reliable and efficient service. As a result, the IURC was justified in requiring GTE to file its tariff which limited its liability because as stated above, the limitation of liability clause was inextricably connected to its duty to provide reasonably adequate service. Thus, through this tariff, which governed the relations between GTE and its customers, the IURC was able to ensure that GTE's customers were provided constant and efficient service. As a result, we find that the IURC had the implicit power to approve the limitation of liability clause.

### C. Public Policy

Prior also contends that the tariff violates public policy because it shelters GTE from virtually all liability for its negligence. Prior also contends that GTE should not be able to limit its liability in a process in which he, and others lack bargaining power. Essentially, Prior is arguing that he had no opportunity to participate in the rate-making process and, therefore, should not be subject to the tariff.

First, we find that the tariff does not violate public policy. As discussed previously, the tariff merely represents a trade-off between ensuring that the utility will provide reasonably adequate service and providing customers with a relatively low-cost service. Additionally, we do not find that Prior lacked all bargaining power in establishing the tariff. This court is not unaware of the potential abuse that can arise as a result of a monopolistic utility. However, this court has

also previously noted that the potential abuse is offset by the public's ability to set the utility's rates through the state and federal regulatory commissions. *Public Service Commission of Indiana v. Indiana Bell Telephone Co.,* 235 Ind. 1, 31, 130 N.E.2d 467, 481 (1955). Thus, Prior's representative in the rate-making process was the IURC. Under these circumstances, we cannot say that the tariff violates public policy.[6]

### D. Article 1, Section 12

■ Finally, Prior argues that the tariff's limitation of liability clause violates Article 1, Section 12, of the Indiana Constitution, which provides that every person who suffers injury to his "person, property, or reputation, shall have remedy by due course of law." IND. CONST. Art. 1, § 12. According to Prior, the tariff's limitation of liability clause denies him a complete and meaningful remedy because it limits his recovery to the cost of the monthly charge instead of permitting him to pursue his lost profits.

■ Initially, we note that although Prior challenges a tariff and not a statute, as stated previously, the tariff was created by the IURC as an exercise of properly delegated legislative power. Thus, we will uphold the tariff under Article 1, Section 12, if the tariff's limitation is one which the legislature itself had the authority to create.

■ To determine whether a statute violates Article 1, Section 12, we first determine whether the right which a party seeks to raise is one which originated in the common law. *In Re Train Collision,* 654 N.E.2d 1137, 1148 (Ind.Ct.App.1995), *trans. denied.* If a party seeks redress for a common law right, the legislature may abrogate or restrict that right as part of the State's police powers as long as the limitation is not arbitrary or irrational. *Johnson v. St. Vincent Hospital, Inc.,* 273 Ind. 374, 394, 404 N.E.2d 585, 598 (1980). In determining whether the

statute is arbitrary or irrational, we look to see whether the limitation is a rational means to achieve the statute's goal. *Id.* In utilizing this analysis, on several occasions we have upheld the legislature's power to abrogate a party's right or remedy without finding a violation of Article 1, Section 12. *Sidle v. Majors,* 264 Ind. 206, 209, 341 N.E.2d 763, 766 (1976) (provision of Indiana Guest Statute which precludes guest passenger from recovering damages for personal injuries does not violate Article 1, Section 12), *cert. denied,* 429 U.S. 945, 97 S.Ct. 366, 50 L.Ed.2d 316; *In Re Train Collision,* 654 N.E.2d at 1148 (provision of Tort Claims Act which prohibits party from bringing action against governmental entity does not violate Article 1, Section 12); *Johnson,* 273 Ind. 374, 396, 404 N.E.2d 585, 599 ($500,000 limitation in Medical Malpractice Act does not violate Article 1, Section 12); *but see Martin v. Richey,* 674 N.E.2d 1015, 1026 (Ind.Ct.App. 1997) (Medical Malpractice Act's statute of limitations violates Article 1, Section 12 which guarantees complete tort remedy).

Here, similarly Prior seeks to enforce his common law right to bring a negligence action. *See Dague v. Piper Aircraft Corp.,* 275 Ind. 520, 418 N.E.2d 207, 213 (1981) (party's right to bring a tort action is a common law right). Thus, the legislature through the IURC, had the power to restrict this right as a rational means of keeping GTE's costs to a minimum so that GTE is able to operate without charging its customers an unreasonable rate. This balance benefits all of GTE's customers, including those who have been harmed by GTE's negligent behavior. As a result, we conclude that GTE's tariff is not arbitrary or irrational and that the tariff's limitation of liability clause does not deny Prior a meaningful remedy under Article 1, Section 12. Therefore, we uphold the validity of the tariff and affirm the trial court's grant of summary judgment in favor of GTE.

Judgment affirmed.

---

6. We also note that our holding is consistent with other jurisdictions which have considered this issue. *See, e.g., Mountain States Telephone and Telegraph Co. v. County of Silver Bow,* 160 Mont. 443, 503 P.2d 526 (1972) (upholding tariff limiting telephone company's liability for negligence to charge for subscriber's service); *Garrison v. Pacific Northwest Bell,* 45 Or.App. 523, 608 P.2d 1206 (1980) (upholding state regulation limiting telephone company's liability where it has acted negligently); *Simpson v. Phone Directories Co.,* 82 Or.App. 582, 729 P.2d 578 (1986) (holding that tariff limited customer's recovery for breach of contract to monthly rate for charge period during which error or omission occurred).

SULLIVAN, J., concurs with opinion.

KIRSCH, J., dissents with opinion.

SULLIVAN, Judge, concurring.

Judge Kirsch's dissent provides occasion for pause with regard to the wisdom of the policy considerations here involved and with respect to the tension between the laudable economic policy which leads us to validate the tariff limitation of liability and Article 1, Section 12 of the Indiana Constitution.

More particularly, I am amenable to the dissent's statement that "Immunities and limitations on liability may make good economics, but good economics do not necessarily make good law." Op. at 777. I am also in agreement that our analysis would seem to validate a hypothetical "limitation on the utility's liability for an employee's negligence in driving a repair truck resulting in serious injury or for an installer's negligence in wiring a customer's house resulting in a deadly fire." *Id.*

Be that as it may, and notwithstanding valid criticism which might be levied against earlier decisions, I am led to my concurrence by those prior legal pronouncements which I consider clearly applicable to the case before us. Despite the well reasoned opinion in *Martin v. Richey* (1997) Ind.App., 674 N.E.2d 1015, the decisions from our Supreme Court, though not specifically dealing with the "occurrence" vs. "discovery" aspect of the limitation, have upheld the constitutionality of the medical malpractice statute of limitations as against challenges based upon Article 1, Section 12 of our constitution. *Rohrabaugh v. Wagoner* (1980) Ind., 274 Ind. 661, 413 N.E.2d 891; *Johnson v. St. Vincent Hospital, Inc.* (1980) 273 Ind. 374, 404 N.E.2d 585. Furthermore, at least one other case, though not involving a due process challenge, has, upon policy grounds, validated the statute as an "occurrence" limitation. *Havens v. Ritchey* (1991) Ind., 582 N.E.2d 792. I believe those decisions lead to an analogous result in the case before us. *See Ledbetter v. Hunter* (1995) Ind.App., 652 N.E.2d 543 (limitation upon malpractice claim of minor not a violation of due process in light of *Johnson v.*

*St. Vincent Hospital, Inc.*). *But see Alwood v. Davis* (1980) Ind.App., 411 N.E.2d 759, 761 ("We have not though, ruled out the possibility of deciding in a future case that this occurrence rule must be applied as though it was a discovery rule due to the questionable constitutionality of the occurrence rule.")

It may well be that our Supreme Court should and will revisit the issues presented both by this case and by *Martin v. Richey, supra.* Until such time, however, the latitude afforded such policy determinations by the legislature or by administrative rules or regulations must receive our deference. For this reason I concur in affirmance of the summary judgment.

KIRSCH, Judge, dissenting.

I respectfully dissent.

Provisions which immunize or limit the liability of those who commit wrongs causing injury to person, property or reputation should be strictly scrutinized because such provisions limit not only the liability of the tortfeasor, they limit also the guaranties of the Indiana Bill of Rights. Article 1, Section 12 of the Indiana Constitution provides that every person who suffers injury to "person, property, or reputation, shall have remedy by due course of law." This provision has been frequently cited, *see op.* at 775, but rarely found to provide the citizens of this state with any protections beyond that provided by our federal constitution.[7] The majority's decision is the latest in this string.

Here, the majority adopts an economic analysis to uphold the limitation contained in the tariff here at issue and concluded that the IURC had the power to impose such a restriction "as a rational means of keeping GTE's costs to a minimum so that GTE is able to operate without charging its customers an unreasonable rate. This balance benefits all of GTE's customers, including those who have been harmed by GTE's negligent behavior." *Op.* at 775. Carried to its conclusion, this analysis would uphold every grant of immunity and every limitation on a tortfeasor's liability since, as acknowledged by the majority, exposure to liability for one's

---

7. *But see Martin v. Richey,* 674 N.E.2d 1015 (Ind.Ct.App.1997).

negligence necessarily affects the expense of operation. *See op.* at 773. In this case, the majority upholds a limitation on damages resulting from GTE's negligence in failing to provide the directory advertising for which it had contracted because holding the utility liable for the damages which it caused would lead to increased rates. This same analysis would uphold a limitation on the utility liability for an employee's negligence in driving a repair truck resulting in serious injury or for an installer's negligence in wiring a customer's house resulting in a deadly fire.

Immunities and limitations on liability may make good economics, but good economics do not necessarily make good law. The Bill of Rights in our Constitution exists to protect the rights of the individual, not to provide for the greatest good for the greatest number. Economic factors must certainly be considered, but they should not control judicial decision.

Moreover, there is no showing that the limitation here as issue is good economics. The majority states that "*it is reasonable to presume* that the IURC concluded that subjecting GTE to unlimited liability would be an expense which could not easily be offset by its revenues ..." and that "the IURC *presumably* believed that a substantial rate increase would not have resulted in a similar rise in service levels." *Op.* at 8 (emphases added). We should not uphold limitation on constitutionally guaranteed rights on the basis of what we presume an administrative agency concluded, but we should subject every such limitation to strict scrutiny.

I would reverse the grant of summary judgment and remand for further proceedings.