Gayle W. MOORE, Appellant,

v.

HARTLEY MOTORS, INC.; ATV Safety Institute; Specialty Vehicle Institute Of America, a corporation incorporated in the District of Columbia; and Jim Croak, Appellees.

No. S–9336.

Supreme Court of Alaska.

Sept. 14, 2001.

Rehearing Denied Dec. 18, 2001.

Thomas R. Wickwire, Fairbanks, for Appellant.

John B. Thorsness and Kimberlee A. Colbo, Hughes Thorsness Powell Huddleston & Bauman, LLC, Anchorage, for Appellee Hartley Motors, Inc.

L.G. Berry, Robertson, Monagle & Eastaugh, Anchorage, for Appellees ATV Safety Institute, Specialty Vehicle Institute of America, and Jim Croak.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

*OPINION*

FABE, Chief Justice.

## I. *INTRODUCTION*

Gayle Moore was injured during an all-terrain vehicle (ATV) safety class when she drove her ATV over a rock and the vehicle rolled over. Before participating in the class, Moore signed a release of liability.

1. Specialty Vehicle Institute of America was added as a defendant in the Second Amended Complaint in October 1995.

After her injury, however, she sued for damages the safety class instructor, the organizations that developed and offered the class, and the owner of the property on which the class took place. She alleged that the release was not valid because she received no consideration, the release was against public policy, and the course was inherently unsafe. The superior court granted summary judgment to the defendants. Because there is a factual dispute regarding whether the layout of the course was unnecessarily dangerous, we reverse and remand for trial on that issue.

## II. *FACTS AND PROCEEDINGS*

Gayle Moore and her husband bought a Suzuki four-wheel ATV in May 1993 from Suzuki, Arctic Cat Motor Sports. At the time of the sale, the salesperson offered the Moores a $50 rebate upon completion of an ATV rider safety class. On October 23, 1993, the Moores attended an ATV rider safety class held on the property of Hartley Motors, Inc. James Croak instructed the class using the curriculum of the ATV Safety Institute. Before starting instruction, Croak requested that all participants sign a consent form and release. Moore signed the consent form and release.

The driving portion of the class took place on a course marked with cones on unpaved ground. During the class, Moore drove her ATV through high grass beyond a cone marking the course. Her vehicle rolled up on a rock protruding from the ground in the high grass. Moore was thrown from her vehicle, suffering injuries as a result.

Moore brought suit in July 1995 against Hartley Motors, the dealer that sold the Moores their ATV, ATV Safety Institute, and Jim Croak.[1] She alleged that the defendants negligently failed to provide a safe ATV rider training course and location, and negligently concealed the fact that the course was unsafe.

In 1996 the defendants[2] sought summary judgment based on the release signed by

2. The ATV dealer was dismissed as a defendant in 1997.

Moore before the class. In opposition to summary judgment, Moore presented a transcript of a telephone conversation between an investigator hired by her attorney and Michael Swan, a former ATV Safety Institute instructor. In this telephone conversation, Swan indicated that he had chosen not to teach an ATV rider course at the Hartley Motors location because he found the location inappropriate.

Superior Court Judge Beverly W. Cutler initially denied the motion for summary judgment. She concluded that while the release was valid as a matter of law, genuine issues of material fact existed regarding the defendants' knowledge of the suitability of the course site and whether they informed Moore of its suitability before she signed the release. In denying summary judgment, the superior court relied upon a theory of material nondisclosure by the defendants. The court found that the allegations presented in the telephone conversation with Swan could be supported by admissible evidence at trial.

In 1999 ATV Safety Institute, Specialty Vehicle Institute of America, and Croak (collectively ATVSI) sought reconsideration of the 1997 summary judgment denial because Michael Swan had died and therefore could not testify at trial. The superior court denied the motion for reconsideration but granted Hartley Motors's motion in limine to exclude hearsay statements by or attributed to Swan.

ATVSI then filed a motion for summary judgment and Hartley Motors filed a renewed motion for summary judgment based on the release Moore had signed. The superior court granted summary judgment to the defendants. The superior court entered final judgment for $32,817.56 fees and costs to Hartley Motors, and $21,049.12 fees and costs to ATVSI. Moore appeals.

### III. *DISCUSSION*

#### A. *Standard of Review*

■ This court reviews grants of summary judgment de novo.[3] We will affirm a summary judgment if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law.[4] When making this determination, we draw all reasonable inferences in favor of the non-moving party.[5] "We make no attempt to weigh the evidence or evaluate the credibility of witnesses, and we assume that all facts set forth in the nonmoving party's affidavits are true and capable of proof." [6]

#### B. *The Superior Court Did Not Err in Finding that the Release Was Valid.*

■ The superior court determined in 1997 that "the release itself is valid as a matter of law against negligence claims brought by [Moore]." Moore asserts that the trial court erred in treating the release as valid because (1) there was no consideration for the release and (2) the release should have been declared void as against public policy.

#### 1. *There was consideration for the release.*

[5] Moore argues that she did not receive any consideration in return for her release. She contends that the $50 rebate promised by the salesperson upon completion of the course[7] was to have been the consideration for her release of liability. Because Moore did not complete the course, she did not receive the $50 rebate.[8] She asserts that

---

**3.** *See Ganz v. Alaska Airlines, Inc.*, 963 P.2d 1015, 1017 (Alaska 1998).

**4.** *See Parson v. Marathon Oil Co.*, 960 P.2d 615, 618 (Alaska 1998).

**5.** *See id.*

**6.** *Samaniego v. City of Kodiak*, 2 P.3d 78, 83 (Alaska 2000).

**7.** Moore has not presented evidence that the parties to this case promised to provide the $50 rebate.

**8.** Moore also asserts that the release was not valid because the instructor returned the signed release to her after the injury. She claims that by returning the slip of paper to her, Croak rejected the release, and therefore the release does not bind Moore. The physical location of the signed consent form—in ATVSI's possession or Moore's—has no effect on the bargained—for exchange that occurred before Moore began participation in the class.

since she did not receive any consideration for the release, it was not effective to protect the defendants from liability.

Moore misconstrues the role of consideration by equating inducement with consideration. Here ATVSI provided consideration for the release, not by offering a $50 rebate, but by offering participation in the class. Thus, even if the $50 rebate induced Moore to take the class, the only reasonable inference from the facts presented is that Moore exchanged the release of liability for participation in the program. Whether Moore considered the $50 rebate her inducement is immaterial to the sufficiency of consideration.[9] The trial court did not err in rejecting Moore's claim that the release was invalid for failure of consideration.

### 2. *The release did not violate public policy.*

 Moore argues that the release should "be set aside as unconscionable and contrary to public policy." An otherwise valid release is ineffective when releasing a defendant from liability would violate public policy.[10] Moore argues that public policy considerations should invalidate the release she signed.

In *Municipality of Anchorage v. Locker*, we evaluated whether an exculpatory release should be invalidated as against public policy.[11] In *Locker*, we concluded that a limited liability clause in a contract for an advertisement in the yellow pages was unconscionable and void as against public policy.[12] We relied upon *Tunkl v. Regents of the University of California*[13] in identifying the factors for review in invalidating an exculpatory provision on public policy grounds, noting that such a provision is likely invalid when

> [i]t concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.[14]

Of particular relevance to this case is the type of service performed and whether the party seeking exculpation has a decisive advantage in bargaining strength because of the essential nature of the service.[15] Here, the ATV safety course, although perhaps providing a desirable opportunity for an ATV driver, is not an essential service, and therefore the class providers did not have a "decisive advantage of bargaining strength" in requiring the release for participation in the

---

9. A comment to the Restatement (Second) of Contracts states:

> Even in the typical commercial bargain, the promisor may have more than one motive, and the person furnishing the consideration need not inquire into the promisor's motives. Unless both parties know that the purported consideration is mere pretense, it is immaterial that the promisor's desire for the consideration is incidental to other objectives and even that the other party knows this to be so.

Restatement (Second) of Contracts § 81 cmt. b (1979).

10. *See Municipality of Anchorage v. Locker,* 723 P.2d 1261, 1264–67 (Alaska 1986).

11. *Id.*

12. *Id.* at 1264–65.

13. 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963).

14. *Locker,* 723 P.2d at 1265 (quoting *Tunkl,* 32 Cal.Rptr. 33, 383 P.2d at 445–46).

15. *See id.*

class.[16] Moore had a choice whether to take the class or not, and chose to sign the release in order to participate. The release in this circumstance does not present a violation of public policy.

Other courts have upheld exculpatory releases for activities similar to ATV riding where the activities themselves were not regulated by statute. These releases precluded liability for injuries sustained while parachute jumping,[17] riding a dirt bike motorcycle in a motorcycle-park facility,[18] and scuba diving as a part of a scuba diving course.[19] The Alaska legislature does not regulate ATV riding. By contrast, the legislature has acted to regulate the ski industry, and as part of this regulation has precluded ski facility operators from obtaining waivers of liability for negligence.[20] Importantly, the Alaska Ski Safety Act of 1994[21] defines the duties of a ski operator[22] and prevents actions against ski operators for injuries resulting from the inherent danger and risk of skiing.[23] The legislature has not chosen to regulate ATV course operators in a similar way.

Moore also contends that because a consent decree issued in a consumer products safety lawsuit requires ATV manufacturers to carry liability insurance covering participants in training courses,[24] it is therefore against public policy for an ATV safety program to require participants to waive and release any injury claims. Moore cites no authority to support this interpretation of the consent decree, and we have discovered no reported decisions that have addressed this issue. We decline to invalidate an otherwise valid release between participants and providers of ATV safety courses on this basis.

### C. A Genuine Issue of Material Fact Exists as to Whether the Course Layout Was Inherently Dangerous.

■ The trial court's summary judgment analysis focused on alleged misrepresentations that could have invalidated the release. As with any contract, a release of liability is only valid to the extent that it reflects a "conspicuous and unequivocally expressed" intent to release from liability.[25] The trial court granted summary judgment after determining that no genuine issue of material fact existed as to whether ATVSI or Hartley Motors knew that the course was allegedly unsafe.

■ Even if there was no genuine issue of material fact regarding a misrepresentation, the trial court erred in failing to consider the scope of the release signed by Moore.[26] Moore agreed to release the ATV

16. *Id.* at 1265.

17. *See Boucher v. Riner,* 68 Md.App. 539, 514 A.2d 485 (1986).

18. *See Kurashige v. Indian Dunes, Inc.,* 200 Cal. App.3d 606, 246 Cal.Rptr. 310 (1988).

19. *See Mann v. Wetter,* 100 Or.App. 184, 785 P.2d 1064, 1066 (1990).

20. *See* AS 05.45.120.

21. *See* AS 05.45.010–.210.

22. *See* AS 05.45.040–.070.

23. *See* AS 05.45.010.

24. The United States government brought suit under the Consumer Product Safety Act, 15 U.S.C. § 2061 (1981), against the manufacturers of ATVs for "relief as may be necessary to protect the public from the risk of an imminently hazardous consumer product." The case settled and the court issued a consent decree requiring manufacturers to market ATVs within specified guidelines, "offer to all interested persons a nationwide hands-on training program," and offer incentives to consumers to take the classes.

25. *Kissick v. Schmierer,* 816 P.2d 188, 191 (Alaska 1991).

26. The release signed by Moore reads as follows:

IMPORTANT INFORMATION. YOU MUST READ AND SIGN THIS CONSENT FORM AND RELEASE: The Consumer Product Safety Commission ("CPSC") reports that over 1,186 people, including many children, have died in accidents associated with ATVs since March, 1986. You should also be aware that 70cc to 90cc ATVs should be used only by persons aged 16 and older. Having been advised of the above, the undersigned agrees to release the ATV Safety Institute, the Specialty Vehicle Institute of America, its members, Trustees, employees, agents, representatives and all other organizations affiliated with the ATV RiderCourse, from any and all liability, loss, damage claim or cause of action, known or unknown, including but not limited to all

Safety Institute and all other organizations and individuals affiliated with the ATV safety class from liability, loss, and damages "including but not limited to all bodily injuries and property damage arising out of participation in the ATV RiderCourse." But the release does not discuss or even mention liability for general negligence. Its opening sentences refer only to unavoidable and inherent risks of ATV riding, and nothing in its ensuing language suggests an intent to release ATVSI or Hartley Motors from liability for acts of negligence unrelated to those inherent risks. Based on this language, we conclude that Moore released ATVSI and Hartley Motors only from liability arising from the inherent risks of ATV riding and ordinary negligence associated with those inherent risks.[27] As we noted in *Kissick v. Schmierer*, an exculpatory release can be enforced if "the intent to release a party from liability for future negligence" is "conspicuously and unequivocally expressed."[28] However, underlying the ATV course release signed by Moore was an implied and reasonable presumption that the course is not unreasonably dangerous.

Moore claims that she was injured when she fell off her ATV after riding over a rock obscured by tall grass. We assume the truth of this assertion for purposes of reviewing the superior court's summary judgment order. Moore asserts that the course on which the class operated was set up in such a way that she had to ride into the grass and that this posed an unnecessary danger.

■ The allegedly improper course layout may be actionable if the course posed a risk beyond ordinary negligence related to the inherent risks of off-road ATV riding assumed by the release.[29] As we have explained in the context of skiing, "[i]f a given danger could be eliminated or mitigated through the exercise of reasonable care, it is not a necessary danger" and is therefore not an inherent risk of the sport.[30] We have described an "unreasonable risk" as one for which "the likelihood and gravity of the harm threatened outweighed the utility of the ... conduct and the burden on the [defendant] for removing the danger."[31] If the course was designed or maintained in such a manner that it increased the likelihood of a rider encountering a hidden rock, then the course layout may have presented an unnecessary danger; holding an ATV safety class on an unnecessarily dangerous course is beyond the ordinary negligence released by the waiver. Holding a safety class on an unreasonably risky course may give rise to liability even if encountering rocks is generally an inherent risk of ATV riding. Moreover, the fact that the course was geared towards novice ATV riders may also affect the level of care required of ATVSI and Hartley Motors to reduce unnecessary dangers and unreasonable risk.[32]

Whether the injury resulted from an unnecessarily dangerous course or a course placed perilously close to an obscured obstacle are questions of fact. Here, Moore presented facts that could support a finding that

bodily injuries and property damage arising out of participation in the ATV RiderCourse.

27. The inherent risks of an activity such as ATV riding are those risks that are obvious and necessary to the sport. These inherent risks, by the very nature of being "inherent," are beyond the control of instructors teaching the activity, the landowner on whose land the activity is conducted, or an organization conducting a program involving the activity.

28. 816 P.2d at 191.

29. *See Scott v. Pacific West Mountain Resort*, 119 Wash.2d 484, 834 P.2d 6, 10 (1992) (noting that an exculpatory clause should not be upheld where "the negligent act falls greatly below the standard established by law for protection of others").

30. *Hiibschman ex rel. Welch v. City of Valdez*, 821 P.2d 1354, 1360 n. 12 (Alaska 1991) (quoting *Assumption of Risk After Sunday v. Stratton Corp.: The Vermont Sports Liability Statute and Injured Skiers*, 3 V.L.Rev. 129, 141–42 (1978)).

31. *State v. Abbott*, 498 P.2d 712, 725 (Alaska 1972).

32. *See, e.g., Hiibschman*, 821 P.2d at 1360 (citing as evidence of ski operator negligence evidence that a ski jump that caused injury was on a beginner's slope, and that an expert witness stated that there should not have been any jumps on a beginner's slope, especially if it was not clearly marked as only being for expert skiers); *Scott*, 834 P.2d at 15 (reversing summary judgment where "some of the evidence would support a conclusion that the race course was laid out in an unnecessarily dangerous manner that was not obvious to a young novice ski-racing student").

the ATV safety course was laid out in an unnecessarily dangerous manner that was not obvious to novice ATV riders and therefore not within the scope of the release. Thus, it was error to grant summary judgment.

## IV. *CONCLUSION*

Moore agreed to release the defendants from liability for injuries sustained as a result of participation in the ATV riding and safety class. The trial court erred in granting summary judgment because genuine issues of material fact existed regarding whether the injury resulted from unreasonable dangers not within the scope of the release. Therefore, we REVERSE the grant of summary judgment in favor of the defendants and REMAND the case to the trial court for further proceedings consistent with this opinion.

CARPENETI, Justice, not participating.