LEDGENDS, INC., d/b/a The Alaska Rock Gym, Appellant,

v.

Mary KERR, Appellee.

No. S–10840.

Supreme Court of Alaska.

May 28, 2004.

Richard A. Weinig, Pletcher & Weinig, Anchorage, for Appellant.

Christine S. Schleuss, Friedman, Rubin & White, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, FABE, and CARPENETI, Justices.

## OPINION

PER CURIAM.

Mary Kerr was injured at the Alaska Rock Gym when she dropped from a climbing wall onto a padded surface. According to her complaint the padded surface had been formed by several mats whose seams were overlaid by tape. The tape where she landed was weak or split and her foot penetrated into the seam. Her movement caused her to suffer a displaced, comminuted fracture of her right knee.

Kerr sued Ledgends, Inc., owner of the gym, contending that Ledgends had actual knowledge of the condition of the tape at the climbing wall and had negligently failed to maintain the premises in a reasonably safe condition. Ledgends answered denying knowledge and negligence and pled as an affirmative defense a release that Kerr had signed. The terms of the release are set out in Appendix B.

· After depositions were taken both parties moved for summary judgment concerning the effect of the release. Superior Court Judge Sharon L. Gleason wrote an opinion denying both motions. Subsequently the parties agreed to a conditional settlement under which Ledgends confessed judgment in the principal amount of $150,000 subject to an appeal of the court's order. The parties agreed that if this court

> rules that the release bars Kerr's claims based on the facts alleged in the complaint · ... the case will terminate with each side to bear its own costs and fees. If the Court rules otherwise, including remand for any other purpose, payment upon the entire ·confessed judgment is due and payable to [Kerr] within 30 days.

Ledgends now appeals.

Upon a careful review of the parties' briefs and arguments, we conclude that the superior court properly denied Ledgends' motion for summary judgment for the reasons expressed in the court's opinion, attached as Appendix A.

The judgment of the superior court is AFFIRMED.

EASTAUGH, Justice, not participating.

## APPENDIX A

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### THIRD JUDICIAL DISTRICT· AT ANCHORAGE

MARY KERR,

Plaintiff,

v.

LEDGENDS, INC. d/b/a ALASKA ·ROCK GYM,

Defendant.

Case No. 3AN–01–05350 CI

## ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

In January 1999 Mary Kerr signed a "Release of Liability—Waiver of Claims" in partial consideration for permission to use the facilities at the Alaska Rock Gym (the Gym), which is the principal place of business of Defendant Ledgends, Inc. In her complaint in this case, Ms. Kerr alleges that she was bouldering at the Gym on May 1, 2000. She alleges that she dropped straight down to the mats upon completing a bouldering sequence and that her right foot slipped into a weak taped joint between mats causing her body to fall to the mat surface. Ms. Kerr alleges that she suffered a bone fracture at her right knee in the fall. She alleges that the Gym had known of the problems with the tape where she landed, but had not repaired it. Ms. Kerr claims that her injury was caused by the Gym's negligent failure to maintain its premises in a reasonably safe condition for its climbing patrons. In answer ·the Gym asserts assumption of the risk as an affirmative defense, contending that Ms. Kerr assumed the risk of injury by climbing at the gym and by signing the release of liability in January 1999. The parties have filed cross-motions for summary judgment on the issue of liability under the release Ms. Kerr signed in January 1999.

The Alaska Supreme Court established the rules of interpreting pre-recreational exculpatory agreements in *Kissick v. Schmierer*, 816 P.2d 188 (Alaska 1991). Under *Kissick* any ambiguities in pre-recreational exculpatory clauses must be resolved against the party seeking exculpation. 816 P.2d at 191. *Kissick* established that "to be enforced the intent to release a party from liability for future negligence must be conspicuously and unequivocally expressed." 816 P.2d at 191. The *Kissick* court stated that an agreement purporting to exculpate the drafter from liability for negligence or tortious conduct is not effective unless the agreement is "clear,

explicit and comprehensible in each of its essential details." 816 P.2d at 191. Finally, *Kissick* requires that such an agreement, read as a whole, must "clearly notify the prospective releasor or indemnitor of the effect of signing the release." 816 P.2d at 191 (citation omitted).

The agreement at issue in *Kissick* provided that flight passengers could not sue for "any loss, damage, or injury to [their] person or ... property which may occur from any cause whatsoever." 816 P.2d at 189. When presented with the question whether that language precluded widows of passengers killed in an accident from bringing wrongful death claims, the *Kissick* court determined that because there was an ambiguity as to whether "injury" included death, the decedents' agreement not to sue did not bar their widows' wrongful death claims. 816 P.2d at 192.

Recently, in *Moore v. Hartley Motors*, 36 P.3d 628 (Alaska 2001), the Alaska Supreme Court interpreted a release signed by a participant in an ATV safety class, which purported to absolve the defendants from "any and all liability, loss, damage claim or cause of action, known or unknown, including but not limited to all bodily injuries and property damage arising out of the participation in the ATV Rider Course." In reversing the entry of summary judgment against a participant injured when her vehicle hit a rock in high grass just off the course, the *Moore* court concluded that the release at issue purported to waive liability only for the inherent risks of ATV riding. The court determined that the release did not suggest "an intent to release [the defendants] from liability for acts of negligence unrelated to those inherent risks." 36 P.3d at 633. Instead, the court found that "underlying the ATV course release signed by [the participant] was an implied and reasonable presumption that the course is not unreasonably dangerous." The court then concluded that the injured rider's allegation that the course was improperly laid out was actionable to the extent that she claimed the course was unreasonably dangerous because it posed risks beyond the ordinary risks of off-road ATV riding assumed by the release.

In the cases discussed above the exculpatory agreement was determined to be inadequate to preclude the plaintiffs' claims. Those cases offer little guidance as to what language could effectively accomplish a waiver of liability for future language, but the cases demonstrate that under Alaska law pre-recreational exculpatory agreements have been held to a very high standard of clarity and that any ambiguity in that regard should be strictly construed against the party seeking exculpation.

In this case, the Gym contends that its release eliminates liability for injuries caused by negligence or by equipment defects. Ms. Kerr contends that the language of the release does not eliminate the Gym's liability for its own negligence. She contends that the release warranted that the Gym would keep its premises reasonably safe and that the language in the release relating to negligence and defects does not clearly alert climbers that they are absolving the Gym from liability for anything more than the inherent risk of climbing. Finally, Ms. Kerr contends that liability for the gym negligently ignoring a known hazard is not unambiguously released.

The Gym argues that its release is clearer than the agreements that were at issue in the Alaska appellate cases discussed above. In so arguing, the Gym emphasizes the use of the word "negligence" in a portion of Paragraph 4 of the release, which reads:

> By signing below, you certify and agree that:
>
> . . .
>
> you release the Alaska Rock Gym, its owners, operators, employees, or insurers from any liability arising from or related to the use of the Alaska Rock Gym by you or your guests, including any physical or mental injury, death, or property loss. This release means you waive any right to make a claim against or sue the Alaska Rock Gym or the other listed parties for any injury or loss of any kind, regardless of whether the injury was allegedly caused by the negligence of the Gym or its staff, other users of the Gym, a defect in the

equipment, structures, building or parking lot, or any other cause.

Although *Kissick* quotes language from legal treatises suggesting that a drafter seeking to remove liability for negligence must do so clearly, "as by using the word 'negligence' itself," 816 P.2d at 191, the use of the word "negligence" alone in Paragraph 4 of the Gym's release does not definitively establish the scope of this release. Under *Kissick*, courts considering agreements that purport to release the drafter from liability for negligence must consider the agreement "as a whole." 816 P.2d at 191. And the agreement as a whole must demonstrate a "conspicuous and unequivocally expressed intent to release from liability." *Moore*, 36 P.3d at 632 (quoting *Kissick*, 816 P.2d at 191).

When read as a whole, the document Ms. Kerr signed does not clearly and unequivocally express an intent to release the Gym for liability for its own future negligence. Some portions of the document suggest the Gym's intent to accomplish ends directly at odds with a complete waiver of the Gym's liability for negligence. For example, Paragraphs 1 and 2 of the release signed by Ms. Kerr both emphasize the inherent risks of climbing and thus suggest that the document is intended to assure that customers are aware of the inherent risks of climbing over which the Gym, by definition, could have no control.[1] *Cf. Moore*, 36 P.3d at 633 (defining inherent risks of sport as dangers that could not be eliminated through exercise of reasonable care). Paragraphs 2 and 3 of the release state that the Gym tries to make its facilities safe, to provide appropriate equipment and "to keep the equipment in good condition." The release also suggests that customers make their own efforts to inspect the facility for themselves before climbing. The representations in the release regarding the Gym's own efforts toward safety suggest that the release was predicated on a presumption that the Gym would strive to meet the standards of maintenance and safety mentioned in the release.

Read as a whole, the release does not conspicuously and unequivocally alert climbers that they are giving up claims against the Gym beyond those associated with the inherent risk of bouldering. The release does not clearly alert climbers that they are giving up any claims that the Gym failed to meet the standards of maintenance and safety that the Gym specifically indicates in the release that it will strive to achieve and upon which the release may have been predicated. Any ambiguity in this regard must be construed against the Gym as the drafter of a pre-recreational exculpatory contract seeking to avoid liability for negligence. *Kissick*, 816 P.2d at 191.

In this case, Ms. Kerr claims that the Gym failed to meet basic standards of maintenance and safety by failing to correct known hazards and thereby caused her knee injury. Because such a claim is not conspicuously and unequivocally precluded by the document read as a whole, this court concludes that Ms. Kerr is not barred by the release from bringing her claim and the Gym is not entitled to summary judgment on the issue of liability.

. . . .

Entered at Anchorage, Alaska this 5th day of March, 2002.

/s/ Sharon L. Gleason
Superior Court Judge

## APPENDIX B

## FOR USE BY ADULT GYM USER

Climber's Name:_____

### RELEASE OF LIABILITY— WAIVER OF CLAIMS

1. **Familiarize Yourself with the Alaska Rock Gym.**

Climbing, exercising and other activities involve certain risks. It is very important that

---

**1.** Paragraph 1 begins: "Climbing, exercising, and other activities involve certain risks. It is very important that you look around the Alaska Rock Gym before you climb or exercise here so that you understand the nature of the Gym and the activities that happen here." Paragraph 2 begins by stating: "The Alaska Rock Gym is a place for physical exercise, notably climbing, and there are risks inherent in any physical activity. These can range from things as simple as slipping on a floor or dropping a barbell to things as complicated as a failure of equipment or climbing structures or the inattention of another climber."

you look around the Alaska Rock Gym before you climb or exercise here so that you understand the nature of the Gym and the activities that happen here. Please feel free to visit the Gym anytime for a tour. Watch people climb. Our staff will be more than happy to show you around and answer any questions you may have.

2. Understand Any Risks.

The Alaska Rock Gym is a place for physical exercise, notably climbing, and there are risks inherent in any physical activity. These can range from things as simple as slipping on a floor or dropping a barbell to things as complicated as a failure of equipment or climbing structures or the inattention of another climber. While we try to make the Gym a safe place, it is ultimately up to you to understand the risks BEFORE engaging in any physical activity. Understand your own physical limits. If you have not been involved in a regular course of exercise, it is always a good idea to check with your doctor before beginning. Finally, the Alaska Rock Gym is a public place. Please safeguard your personal property. The Alaska Rock Gym cannot be liable for any loss or damage to personal property or possessions.

3. Use of Equipment and Rentals

The Alaska Rock Gym sells and rents equipment and other items, and it provides other equipment, such as ropes, carabiners, and exercise equipment, for the use of its customers. While we strive to provide appropriate equipment for people of all abilities and to keep the equipment in good condition, it remains to you, the user, to educate yourself as to the proper use of the equipment. Please ask any staff member if you have any questions. Inspect your equipment closely. The Alaska Rock Gym shall not be liable for any injuries, damages or loss resulting from any defect, visible or hidden, in any equipment sold, rented or provided by Alaska Rock Gym.

4. Release of Liability.

By signing below, you certify and agree that:

● there is no medical reason why you could not participate in activities at the Alaska Rock Gym;

● you have had full opportunity to inspect the Gym, and you understand the activities that are carried out here;

● you release the Alaska Rock Gym, its owners, operators, employees, or insurers from any liability arising from or related to the use of the Alaska Rock Gym by you or your guests, including any physical or mental injury, death or property loss. This release means you waive any right to make a claim against or sue the Alaska Rock Gym or the other listed parties for any injury or loss of any kind, regardless of whether the injury was allegedly caused by the negligence of the Gym or its staff, other users of the Gym, a defect in equipment, structures, building or parking lot, or any other cause.

THIS WAIVER OF CLAIMS IS GIVEN IN PARTIAL CONSIDERATION FOR PERMISSION TO USE THE ALASKA ROCK GYM, AND IT WILL CONTINUE TO APPLY DURING EACH VISIT TO THE ALASKA ROCK GYM IN THE FUTURE UNTIL YOU REVOKE IT IN WRITING.

I HAVE READ THIS RELEASE. I UNDERSTAND ITS CONTENT. I AGREE TO ITS TERMS.

_____
Climber's Signature

Date:_____